**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOSEPH R. LAINE,<br><br>Plaintiff,<br><br>v.<br><br>SUNTRUST BANK A.K.A. TRUIST BANK,<br><br>Defendant. | ) | Civil Action No. 1:25-cv-2377 (RBW) |

**MEMORANDUM OPINION**

The plaintiff, Joseph R. Laine, proceeding pro se, brings this civil action against the defendant, SunTrust Bank a/k/a Truist Bank. Complaint ("Compl.") at 4, ECF No. 1. The plaintiff contends that a 2014 Consent Judgment in a different case requires the defendant to discharge a lien on his property. See generally id. (referencing United States v. SunTrust Mortgage, Inc. Civil Action No. 14-1028 (RMC) (D.D.C. 2014). Currently pending before the Court is the defendant's Motion to Dismiss the Complaint ("Def.'s Mot."), ECF No. 15. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant the defendant's motion.

## I. BACKGROUND

### A. Factual Background

The allegations in the Complaint are difficult to decipher. As best as the Court can discern, the plaintiff claims that "[u]nder consent judgment civil action #14-1028 (RMC)[,]

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the defendant's Memorandum in Support of Motion to Dismiss ("Def.'s Mem."), ECF No. 15-1; (2) the Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.s Opp'n"), ECF No. 16; and (3) the defendant's Reply in Support of Motion to Dismiss ("Def.'s Reply"), ECF No. 17.

which used guidelines from the National Mortgage Settlement . . . [,the defendant] released [a] lis pendens [on the plaintiff's property on] 12/31/12 [and] had till 12/31/17 to pursue foreclosure but chose to walkaway." Compl. at 4. The plaintiff further claims that "[s]ince [the defendant] chose to not foreclose then [the defendant was required] to release the lien under the guidelines of the National Mortgage Settlement." Id. at 6. The plaintiff attached to his Complaint a portion of the Consent Judgment which was entered in United States of America et al. v. Suntrust Mortgage, Inc., No. 14-cv-1028 (RMC) (D.D.C. 2014), see id. Exhibit ("Ex.") 1, and what the plaintiff alleges is a page from the "National Mortgage Settlement[,]" see id. Ex. 2. Although it appears from the Complaint that the plaintiff is seeking to discharge a mortgage that the defendant holds on his property, the plaintiff has not alleged any facts about the mortgage or, as the defendant notes, about the plaintiff's 2010 bankruptcy or the defendant's previous foreclosure action. See Def.'s Mem. at 2–4.

In resolving a motion to dismiss, the Court may consider documents incorporated in the Complaint by reference, which can occur "where the document is not attached by the plaintiff, but is 'referred to in the complaint and [ ] integral to [the plaintiff's] claim." Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (quoting Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004) (alterations in original). The Court may also take judicial notice of public documents and records from other court proceedings. See Lipton v. MCI Worldcom, Inc., 135 F. Supp. 2d 182, 186 (D.D.C. 2001); Kungle v. State Farm, Fire & Cas. Co., 48 F. Supp. 3d 67, 74 (D.D.C. 2014). Because the plaintiff's mortgage, 2012 bankruptcy, and the defendant's

subsequent foreclosure action are integral to the plaintiff's claim, the Court will consider them in resolving the defendant's motion to dismiss.[2]

Upon considering those records, it becomes clearer that on April 18, 2005, the plaintiff executed a promissory note in favor of SunTrust in the principal amount of $170,000 and a mortgage securing the note with his residence in Port Charlotte, Florida (the "Property"). See Def.'s Mem. at 2; id. Ex. 1 ("Note"); id. Ex. 2 ("Mortgage"). The Note and Mortgage provide that they are "governed by, and interpreted in accordance, with federal and Florida law[,]" Def.'s Mem. at 2, 5; see Mortgage at 6, and the "maturity date of the Note and Mortgage was May 2, 2025[,]" Def.'s Mem. at 2.

On December 16, 2010, the "[p]laintiff filed a Chapter 7 bankruptcy case[,]" Def.'s Mem. at 3; see In re Laine, No. 10-bk-29967 (Bankr. M.D. Fla. filed Dec. 16, 2010). The plaintiff received his Chapter 7 discharge on April 4, 2011, see Def.'s Mem. Ex. 5 ("Discharge"), but according to the defendant, "a creditor's right to foreclose on [a] mortgage survives or passes through the bankruptcy," id. at 3 (quoting Johnson v. Home State Bank, 501 U.S. 78, 83 (1991)).

On April 12, 2012, the defendant foreclosed on the plaintiff's mortgage, alleging that the plaintiff had defaulted "by failing to make the installment payments due on October 2, 2010[.]" Id. at 3; see id. Ex. 6 ("Foreclosure Complaint") ¶ 6. The defendant simultaneously recorded a notice of lis pendens against the Property. See id. Ex. 7 ("Lis Pendens"). However, on December 31, 2012, the defendant "filed a Notice of Voluntary Dismissal Without Prejudice and

[2] Specifically, the Court will take judicial notice of and consider: (1) a 2005 Promissory Note which was attached to the plaintiff's opposition to the defendant's motion to dismiss as Exhibit 1; (2) the mortgage agreement which was attached to the plaintiff's opposition as Exhibit 2; (3) the verified bankruptcy complaint which was attached to the plaintiff's opposition as Exhibit 6; (4) the notice of lis pendens which is attached the plaintiff's opposition as Exhibit 7; (5) the notice of dismissal and discharge of the lis pendens which is attached to the plaintiff's opposition as Exhibit 8; (6) records in the defendant's 2010 Chapter 7 bankruptcy case, In re Laine, 10-bk-29967 (Bankr. M.D. Fla. 2010); and (7) the Consent Judgment in United States v. SunTrust Mortgage, Inc., Civil Action No. 14-1028 (RMC) (D.D.C. Sept. 30, 2014).

Notice of Discharge of Lis Pendens . . . in the Florida State Court." Def.'s Mem. at 4; see Ex. 8 ("Notice of Dismissal").

On September 30, 2014, in a separate case brought by the United States, the Consumer Financial Protection Bureau ("CFPB"), and numerous states against SunTrust Mortgage, Inc., a different court in this District entered a Consent Judgment that resolved allegations involving federal and state consumer-protection violations regarding SunTrust Mortgage, Inc.'s mortgage-servicing practices. See Def.'s Mem. Ex. 9 ("Consent Judgment") at 1–2. The Consent Judgment incorporated a set of "Servicing Standards." Id. ¶ 6. Section VIII.A of the Servicing Standards, entitled "Measures to Deter Community Blight," provides in relevant part:

> 4. When the Servicer makes a determination not to pursue foreclosure action on a property with respect to a first lien mortgage loan, Servicer shall:
>
> a. Notify the borrower of Servicer's decision to release the lien and not pursue foreclosure, and inform borrower about his or her right to occupy the property until a sale or other title transfer action occurs; and
>
> b. Notify local authorities, such as tax authorities, courts, or code enforcement departments, when Servicer decides to release the lien and not pursue foreclosure.

Consent Judgment; Compl. at 8.

On April 5, 2023, the plaintiff, through counsel, sent the defendant a letter disputing the validity of the lien on his property, citing the "National Mortgage Settlement," and offering $100 as satisfaction of the mortgage, stating that "[he] will file suit seeking to quiet title and seeking damages" if the defendant did not respond within thirty days. Pl.'s Opp'n, Ex. A at 1. The defendant responded by letters dated July 13, 2023, again on March 6, 2024, and also on May 1, 2024, stating that it had "made the decision to charge off the account on September 28, 2012" and that the lien remained valid and would not be released until the balance was paid or otherwise settled. Id. at 2–4. In its final letter, dated July 26, 2024, the defendant further

explained that "[i]n accordance with Florida Statute §[ ]95.281, the lien of an encumbering real property 'shall terminate . . . 5 years after the date of maturity.'" See id. at 5.

### B. Procedural Background

The plaintiff filed his Complaint on July 17, 2025, seemingly relying on Section VIII of the Consent Judgment, seeking release of the lien. See Compl. at 3–5. On October 27, 2025, the defendant moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that neither Florida law nor the Consent Judgment requires it to release a lien that remains valid and enforceable. See Def.'s Mot. at 1; Def.'s Mem at 5–8. The plaintiff filed an opposition on November 10, 2025. See Pl.'s Opp'n at 1–3. The defendant filed its reply to the plaintiff's opposition on November 17, 2025. See Def.'s Reply at 1.

## II. STANDARDS OF REVIEW

### A. Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a complaint has properly "state[d] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012)

(internal quotation marks omitted). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**B. Pro Se Parties**

The pleadings of pro se parties are "to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Furthermore, all factual allegations by a pro se litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a motion to dismiss. See Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999). Nonetheless, a "pro se complaint, like any other, must present a claim upon which relief can be granted by the court." Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981).

## III. ANALYSIS

The plaintiff appears to argue that the defendant's dismissal of its 2012 foreclosure on his property, together with "its decision to charge off the account on Sept[ember] 28[,] 2012[]" and "release [the] lis pendens on Dec[ember] 31, 2012[,]" constituted a "determination not to pursue foreclosure" on his property within the meaning of Section VIII.A.4 of the Consent Judgment.

Pl.'s Opp'n at 1; see Compl. at 4, 6–8. The plaintiff also argues that "there was a 5 year [s]tatute of [l]imitations [, during which the defendant could foreclose on his property,] which ended on Dec[ember] 31, 2017[.]" Id.; see Compl. at 6. The defendant responds that the statute of limitations has not expired, Def.'s Mem. at 6, and that the Consent Judgment does not prohibit it from enforcing the lien it holds on the plaintiff's property because: (1) the portion of the Consent Judgment that the defendant relies upon does not force mortgagors to discharge valid mortgage liens; (2) the defendant never made a determination not to pursue foreclosure; (3) the Consent Judgment was entered into after the defendant dismissed its 2012 foreclosure action against the plaintiff; (4) the Consent Judgment was only in effect until 2018; and (5) the plaintiff does not have a private right to enforce the Consent Judgment, Def.'s Mem. at 8.[3] The Court will first determine whether the plaintiff has a private right to enforce the Consent Judgment before addressing the defendant's other arguments.

### A. Whether the Plaintiff Has a Private Right to Enforce Section VIII.A.4 of the Consent Judgment

Although the Note and Mortgage are private instruments "governed by and interpreted in accordance with federal law and the laws of the State of Florida[,]" Def.'s Mem., Mortgage at 6, Note at 1, the Consent Judgment is a federal judgment in a government enforcement action, and claims concerning its interpretation and enforcement arise under federal law. See Beckett v. Air Line Pilots Ass'n, Int'l, 995 F.2d 280, 285–86 (D.C. Cir. 1993) ("[W]e see appellants' trust

[3] The defendant does not argue that the Court lacks personal jurisdiction, so the Court will consider that argument waived. See Gligorov v. Nation of Brunei, No. 24-7150, 2026 WL 2276372, at *5 (D.C. Cir. Aug. 7, 2026) ("Lack of personal jurisdiction is the corporate defendants' defense to assert or to waive. Equally, a plaintiff can forfeit theories of personal jurisdiction by failing to raise them in briefing."). Similarly, "a party's failure to object to venue may waive the issue[,]" Dalton Trucking, Inc. v. U.S. E.P.A., 808 F.3d 875, 880 (D.C. Cir. 2015), and because the defendant has not objected to venue, the Court need not address that issue.

claim as a federal claim because it arises out of the Consent Decree"). Consent judgments "have many of the attributes of ordinary contracts, [and] they should be construed basically as contracts[.]" United States v. ITT Cont'l Baking Co., 420 U.S. 223, 236–38 (1975). Their "scope . . . must be discerned within [their] four corners, not by reference to what might satisfy the purposes of one of the parties to it." United States v. Armour & Co., 402 U.S. 673, 681–82 (1971). Thus, the Consent Judgment "must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation." Id. at 682.

The District of Columbia Circuit has held that "[u]nless a government consent decree stipulates that it may be enforced by a third party beneficiary, only the parties to the decree can seek enforcement of it." Rafferty v. NYNEX Corp., 60 F.3d 844, 849 (D.C. Cir. 1995). Moreover, "[a] consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975).

Here, Section IV of the Consent Judgment, entitled "Enforcement," does not refer to borrowers or third-party beneficiaries. See Consent Judgment ¶¶ 6–8. Rather, it provides that the Servicing Standards "shall be enforced in accordance with the authorities provided in the Enforcement Terms" through a court-appointed Monitor and a Monitoring Committee composed of the government signatories to the decree. Id. § IV. The Enforcement Terms identify only the "Monitor," the "Monitoring Committee," and the United States, and the participating States as enforcement authorities. Id. Therefore, because a government consent decree may be enforced by a third party only where it so stipulates, see Rafferty, 60 F.3d at 849; Beckett, 995 F.2d at 288, and nothing in the Consent Judgment stipulates that borrowers such as the plaintiff can

enforce the Consent Judgment,[4] the Court concludes that the plaintiff does not have a private right to enforce Section VIII.A.4. See generally Compl.

### B. Whether the Plaintiff Has Adequately Pleaded a Plausible Claim, Assuming He Could Enforce the Consent Judgment

Even if the plaintiff had a private right to enforce Section VIII.A.4, for the reasons set forth below, he still fails to state a plausible claim because the statute of limitations has not expired and he has not adequately alleged that the defendant violated the Consent Judgment.

#### 1. Whether the Statute of Limitations Has Expired

The plaintiff appears to allege that the defendant cannot foreclose on his property because the statute of limitations to do so has expired. See Compl. at 6. The plaintiff claims that the defendant was required "to restart that particular lawsuit" within five years of the December 31, 2012 voluntary dismissal, and that its failure to do so by December 31, 2017 establishes that "[the] defendant made the determination not to pursue [the] foreclosure." Pl.'s Opp'n at 1; see Compl. at 4. The plaintiff further states "to restart that particular lawsuit there was a 5[-]year statute of [l]imitations which ended on Dec[ember] 31, 2017." Id. Neither party disputes that Florida law governs the Mortgage and Note, and under Florida law, an action to foreclose a mortgage must be commenced within five years of the date of the last payment or of acceleration. Fla. Stat. § 95.11(2)(c). That limitations period, however, does not run from the date on which a prior foreclosure action premised on a different default is voluntarily dismissed. See Bartram v. U.S. Bank Nat'l Ass'n, 211 So. 3d 1009, 1019 (Fla. 2016) (holding that the

[4] A separate section of the Consent Judgment, Section IV.M.1.d, expressly provides that "[a]ny contract for transfer or sale of servicing rights shall designate that borrowers are third party beneficiaries under paragraphs IV.M.1.b and IV.M.1.c, above." Consent Judgment, Ex. A § IV.M.1.d, at A-27. The Section that the plaintiff seeks to enforce, by contrast, contains no such designation and neither identifies borrowers as third-party beneficiaries nor authorizes them to enforce its terms. See id. § VIII.A.4. The presence of an express third-party beneficiary designation in Section IV.M.1.d, and the lack of such a designation from Section VIII.A.4, further indicates that the settling parties did not intend borrowers to enforce the provision on which the plaintiff's claim relies. See id.

dismissal of a prior foreclosure action, without an adjudication on the merits, "revokes the acceleration of the payment due date" and restores the original installment schedule, such that "the statute of limitations . . . would not continue to run after [the] involuntary dismissal" and a subsequent action premised on "a separate and distinct default" would not be time-barred (citation omitted)); Snow v. Wells Fargo Bank, N.A., 156 So. 3d 538, 541 (Fla. 3d Dist. Ct. App. 2015) ("The statute of limitations on a mortgage foreclosure action does not commence until a default in payment of the final installment, unless the mortgage contains an acceleration clause.").

Here, the plaintiff's own Mortgage and Note fixed the maturity date as May 2, 2025, the date on which "all principal and all accrued interest not yet paid" became due. Def.'s Mem., Ex. 1 at 1. Because "dismissal of the foreclosure action against the mortgagor ha[d] the effect of returning the parties to their pre-foreclosure complaint status, where the mortgage remains an installment loan," the mortgage's May 2, 2025 maturity date still controls the statute of limitations deadline. Bartram, 211 So. 3d at 1019. And, because the plaintiff does not allege that the Mortgage was ever paid in full, the limitations period applicable to a foreclosure premised on the maturity default did not begin to run until May 2, 2025, and therefore will not expire until May 2, 2030.

**2. Whether the Complaint Plausibly Alleges that the Defendant Violated the Consent Judgment**

The Complaint also does not plausibly allege that the defendant violated the Consent Judgment. The plaintiff appears to principally rely on two events in support of his position that the defendant can no longer enforce the lien on his property: (1) the defendant's voluntary, without-prejudice dismissal of its 2012 foreclosure action, together with its concurrent release of

the related lis pendens; and (2) the defendant's decision to "charge off" the loan for accounting purposes later that same month. See Compl. at 4; Pl.'s Opp'n at 1.

This claim fails for several reasons. First, a "dismissal of an earlier foreclosure action creates a new cause of action, regardless of whether that dismissal was entered with or without prejudice"; it is not a plausible indicator that a mortgagor has permanently decided to abandon its security interest. Bartram, 211 So. 3d at 1020; see Def.'s Mem., Ex. 8 at 1 (Notice of Dismissal, stating that the dismissal is "without prejudice"). Nor does an internal "charge-off" designation reflect a determination to forgo foreclosure; rather, a charge-off is instead "strictly a bookkeeping or accounting procedure within the bank," undertaken for reasons independent of the lienholder's litigation strategy. Cent. Home Tr. Co. of Elizabeth v. Lippincott, 392 So. 2d 931, 933 (Fla. 5th Dist. Ct. App. 1980).

The plaintiff also appears to allege that the defendant's decision to discontinue "[f]orce-[p]laced [i]nsurance" on the Property further demonstrated that it had abandoned foreclosure efforts. See Pl.'s Opp'n at 1. He further references a separate class action involving force-placed insurance, Hamilton v. Suntrust Mortgage, Inc., No. 13-cv-60749 (S.D. Fla.), in which he alleges he was a class member. Id. To the extent the plaintiff relies on the defendant's alleged discontinuation of force-placed insurance or a separate class action in another case involving force-placed insurance, those allegations likewise do not adequately plead a plausible claim for relief. The plaintiff does not identify any provision in the Consent Judgment, the Note, the Mortgage, or any other source of law under which the alleged discontinuation of force-placed insurance required the defendant to release its lien or otherwise rendered its lien unenforceable. See Brown, 789 F.3d at 152.

Nothing else properly before the Court regarding the defendant's motion to dismiss plausibly suggests that the defendant ever notified the plaintiff, as Section VIII.A.4 would require if it applied, of "a decision to release the lien and not pursue foreclosure." Def.'s Mem., Ex. 9 (Consent Judgment), Ex. A § VIII.A.4.a. The plaintiff has therefore failed to plausibly claim that the defendant violated the Consent Judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion to dismiss.

**SO ORDERED** this 22nd day of September, 2026. [5]

REGGIE B. WALTON
United States District Judge

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.